## Case No. 10,570.

### The ORIENTAL.

[2 Flip. 37;[1] 23 Int. Rev. Rec. 216; 9 Chi. Leg. News. 321; 2 Cin. Law Bul. 140.]

Circuit Court, N. D. Ohio. May 31, 1877.

APPEAL IN ADMIRALTY ·FROM DISTRICT TO CIRCUIT COURT—WITHIN WHAT TIME TO BE TAKEN.

1. The provisions of section 635. Rev. St. U. S., relative to appeals within one year from the

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

time of entering the judgment, order or decree appealed from, do not apply to appeals from decrees in admiralty.

2. Appeals in admiralty should be taken to the term of the circuit court next succeeding the term of the district court at which the decree was rendered.

[In admiralty. In this case a decree was entered in favor of the libellants, Charles N. Russell and others, in the district court. At a subsequent term of the court the claimants moved to set aside the decree on the ground of surprise. This motion was overruled. Case No. 10,569a. The case is now heard on appeal.]

Ingersoll & Williamson and Willey, Terrell & Sherman, for the motion.

Newberry, Pond & Brown and Mix, Noble & White, against the motion.

SWAYNE, Circuit Justice. This is a motion to dismiss an appeal in admiralty, upon the ground that the appeal was not taken in time. In other words, that it was not taken to the term of the circuit court next succeeding the term of the district court at which the decree was rendered.

The decree was rendered by the district court at the January term, to-wit: on the 23d of February, 1876, and that term closed on the first Monday in April, 1876. The then next term of the circuit court began on the first Tuesday in April, 1876. The appeal was taken January 12, 1877, to the April term, 1877, of the circuit court. That is, to the fourth term, and not to the first term, there being three intervening terms. The statutes in this connection, which it is necessary to consider, are, first, the act of 1789, § 21 [1 Stat. 83], which is as follows:

"From final decrees in a district court in causes of admiralty and maritime jurisdiction, where the matter in dispute exceeds the sum or value of three hundred dollars, exclusive of costs, an appeal shall be allowed to the next circuit court to be held in such district."

Under that provision it has been held that appeals from the district court in such cases were properly entered at the term of the circuit court begun next after the entry of the decree of the district court, although the term of the district court, during which the decree was entered, had not been ended when the term of the circuit court was begun. In U. S. v. Certain Hogsheads of Molasses [Case No. 14,766], it was held further, that if an appeal be not taken to the term of the circuit court held next after the term of the district court at which the decree was entered, the right to appeal is lost, and that ends the case, so far as the question of appeal is concerned. U. S. v. The Glamorgan [Id. 15,214].

The next act to be considered—as it regards the question under consideration—is the act of 1803, § 2 [2 Stat. 244], the language of which is more comprehensive than in the act of 1789. That act is confined expressly to decrees of admiralty. The language of the act of 1803 is: "From all final judgments or decrees in any of the district courts of the United States, an appeal, where the matter in dispute, exclusive of costs, shall exceed the sum or value of fifty dollars" (reducing the amount of three hundred dollars, required in the act of 1789, to the sum of fifty dollars), "shall be allowed to the circuit court next to be holden in the district where such final judgment or judgments, decree or decrees, may be rendered," etc.

Under this provision it was held, also, in Montgomery v. Henry, 1 Dall. [1 U. S.] 50; Norton v. Rich [Case No. 10,352]; and U. S. v. Haynes [Id. 15,335],—that the appeal must be taken to the next term of the circuit court succeeding the term of the district court, during which the decree was rendered, and that it cannot be taken subsequently. It will be observed—a matter to which I have adverted already—that the language of the second section of the act of 1803 is much larger than the corresponding language in the act of 1789.

Yet it has been held by the supreme court of the United States, that notwithstanding the generality of the terms in this act, it made no alteration in the law of 1789 as it respects appeals to the circuit court, except in reducing the sum or matter in controversy to fifty dollars, on which such appeals may be allowed. The words, "All final judgments or decrees," refer to judgments or decrees in causes of admiralty and maritime jurisdiction, and in such causes only has this act authorized an appeal from the district court to the circuit court. U. S. v. Nourse, 6 Pet. [31 U. S.] 496; U. S. v. Haynes [supra]; and Montgomery v. Henry, 1 Dall. [1 U. S.] 50.

So stood the law of the United States, and such were the adjudications from the passage of the first judiciary act of 1789 on the subject, till the passage of the act of June 1, 1872 [17 Stat. 196]. The second section of that act, or so much of it as is necessary to be considered in this connection, and which, it is claimed, abrogates or repeals the provision, which has been read, of the act of 1803, which was a re-enactment—as before stated—of the provision on that subject of the act of 1789, and substitutes, as it is claimed, one year for the time prescribed by those acts for the taking of appeals in admiralty from the district court to the circuit court, after regulating appeals from the circuit court to the supreme court of the United States, proceeds as follows:

"No judgment, decree, or order of a district court, rendered after this act shall take effect, shall be reviewed by a circuit court of the United States, upon like pro-

cess or appeal, unless the process is sued out, or the appeal taken within one year after the entry of the judgment, decree, or order, sought to be reviewed. Provided, that where a party entitled to prosecute a writ of error, or to take an appeal, is an infant, or non compos mentis, or imprisoned, such writ of error may be prosecuted, or such appeal may be taken within the period above designated, after the entry of the judgment, decree, or order, exclusive of the time of such disability."

Now, to see the proposition which is presented in its true light, it is necessary to recur to the provision already adverted to in the act of 1789, and in the act of 1803, upon this subject, and then to consider the change which it is claimed this act of 1872 makes in the pre-existing law as to the time within which appeals in admiralty from the district court to the circuit court are proper to be made.

As before remarked, the act of 1789 required such appeals to be taken to the next term of the circuit court. That provision remained untouched from 1789 to 1803, and then, although the language employed is broader, yet according to the interpretation given to it by the supreme court in [U. S. v. Nourse] 6 Pet. [31 U. S.] 496, the act of 1803 simply re-enacted, without any change, the provision on that subject of the judiciary act of 1789.

That provision remained in force from 1789 to 1872. This is unquestionably so. It has not been controverted in the argument which has been submitted to this court.

It is claimed that by this act of 1872, in the first place, the time to appeal in the class of cases to which the one under consideration belongs, was extended to the period of one year.

No matter how small, or what the circumstances of the case may be, a party, instead of being required by way of hastening the progress of the case to its final determination, as was required by the previous laws, might rest perfectly quiet for the period of one year.

In the next place, it is equally clear, in the event of that interpretation being adopted, that in the event the party entitled to an appeal were "an infant, or non compos mentis, or imprisoned, such appeal might be taken within the periods designated after the entry of the judgment, exclusive of the term of such disability." That is to say, if there were a devolution of the right of appeal upon an infant in the progress of the litigation, or if an infant were a party ab origine and entitled to an appeal, or a person non compos mentis were entitled to an appeal in any way, or a person imprisoned; the infant, it is obvious, under that construction of the statute, would be entitled to twenty-one years, besides the year allowed to a person under no disability, less the day of his birth, and if a person entitled to an appeal should be insane

and continue so for fifty or sixty years, upon being restored to sanity, no matter when, he might take an appeal, and so, too, the imprisoned. This would be the necessary consequence of that construction of the intendment.

Now, as adverse to the proposition contended for, independent of these considerations, it is to be remarked, that this provision of the act of 1872, does not repeal the provision in question of the act of 1803. There is no language in the act—nothing explicit—to that effect. If there is any such repeal, it is a repeal by implication, and the rule of law is, that where a repeal by implication is claimed, the conflict and repugnancy between the earlier and later statutes—the later working such alleged repeal—must be so clear and palpable and so irreconcilable, as to leave no room for a reasonable doubt, that it was the intendment of the legislative mind in enacting the latter law to repeal the former. I am of the opinion that this is not such a conflict and that this case is not within that character. But this act of 1872 was itself repealed by the Revised Statutes of the United States. It contained substantially both the provision in question of the re-enacting act of 1803, and also of the act of 1872, which is relied upon to have wrought the effect here insisted.

In turning to the provisions of the Revised Statutes in this connection, they will be found as follows: Section 631. "From all final decrees of a district court in causes of equity or of admiralty and maritime jurisdiction, except prize causes, where the matter in dispute exceeds the sum or value of fifty dollars, exclusive of costs, an appeal shall be allowed to the circuit court next to be held in such district, and such circuit court is required to receive, hear and determine such appeal."

Here for the first time equity cases, to be appealed from the district court to the circuit court, are placed upon the same footing with decrees in admiralty, and that is the only departure in this act from the act of 1803, otherwise the language is substantially the same. And it is a well settled rule of interpretation (see 2 Hill, 702; 24 Wend. 47) that where a prior act is abrogated by a later one, and the prior one is re-enacted by the later one, unless there be a very material change in the language, such as to exclude the reasonable construction that the subsequent act was intended merely to be put in substitution for or take the place of the prior act, it is to be held still to be substantially the same law. That rule applies here. For all the purposes of this case, this second section of the act of 1872 must be simply a re-enactment of the provision upon the same subject of the act of 1803.

Further, in this connection, the meaning of the terms, "an appeal shall be allowed to the circuit court next to be held in such district," has been settled by repeated adjudications. As that language was found in the act of 1789 and also in the act of 1803, they must

necessarily be held on authority as well as reason to have the same meaning.

Then here is this provision in the Revised Statutes. clear and explicit, viewed from any standpoint, and in any. light, leaving no room for doubt, that congress by this act required as it had required by the act of 1789, and again by the act of 1803, that appeals in this class of causes—that is, appeals in admiralty from the district court to the circuit court—must be taken to the next term of the circuit court after the rendition of the decree in the district court, or an appeal cannot be taken at all.

It is held that having enacted that long continued provision in accordance with the long continued policy of the legislation of congress upon the subject, the legislature that enacted these Revised Statutes in a body, by a subsequent provision abrogated and annulled that provision in toto. That is the contention upon the other side; and that is founded upon the re-enactment into these Revised Statutes by congress of the provision, which has been remarked upon already, of the act of 1872, and which is found in section 635.

"No judgment, decree, or order of a district court shall be reviewed by a circuit court, on writ of error or appeal. unless the writ of error is sued out, or the appeal is taken within one year after the entry of such judgment, decree or order."

The same line of argument applies here that applied to this provision of the act of 1872, before its re-enactment into these Revised Statutes, and what has been said upon this subject already need not be repeated.

But there are some further remarks proper to be made beside the points and considerations that there is no express repeal, no express purpose by this provision to change that provision. It has prevailed from 1789 down to the enactment of the act of 1872, if that act made the change contended for. Here are these two sections found in their proximity. one to the other.

It seems to me in the light of all these considerations. without going over the ground that has been gone over already. viewing the subject in the light of the adjudications and rules upon the point of repeals by implication. that it is entirely incredible that congress should have meant by section 635 to repeal section 631, so far as the time for appeal is concerned, and that section contains nothing else. I say it is incredible that congress ever enacted one provision by section 631, and on the same page could have intended to enact a repealing provision—repealing by implication. section 631. The considerations which have been adverted to, and which I will not consume time by repeating, it seems to me. fully sustain this rule and exclude any other conclusion upon the points here under consideration.

But it is said that the language is, "no judgment. decree. or order of a district court" and that this term, "decree," necessarily includes decrees in admiralty, and the inference follows, if this be so. that there is a repeal by implication to the extent contended.

Firstly, I have to remark. that it is a canon of statutory construction. asserted many times in the best considered adjudications that the intent of the legislature—if it can be ascertained—constitutes the law; and in connection with that proposition. that a thing may be within the letter of the law clearly and not within its meaning. and that a thing may be without the letter of the law and yet within its meaning, and in either case the intent thus established constitutes the law; and judicial determinations to this effect are very numerous. A very well considered case upon this subject is to be found in Slater v. Cave, 3 Ohio St. 80.

Now under that view of the subject,. if it were necessary I should hold that the word "decree" here, has no meaning, and that it would be the duty of the court to exclude it from consideration and to consider it inadvertently inserted as having no effect in fixing the construction of the language. found in this statute. And again, see the case of U. S. v. Nourse, 6 Pet. [31 U. S. 470], which has been adverted to. The act of 1803 went in comprehensiveness beyond the act of 1789 in this: that the act of 1789 was confined in terms to decrees in admiralty. The act of 1803 uses the language, "all judgments or decrees," and yet the supreme court of the United States in the case mentioned had no hesitation in saying that the act of 1803—notwithstanding this difference—was intended to be confined. by the law-making power to decrees in admiralty alone. That no judgment, technically as such. and no decrees, technically as such. was intended to be embraced in that language, except simply decrees in admiralty.

On the authority of that case, as well as other numerous adjudications. if it were necessary, I should have no hesitation in holding in the light of the entire context of these several provisions, that it was the intent of the legislature not to extend the time within which appeals in admiralty should be taken, but that having fixed the rule upon that subject, then out of abundant caution it was the intent of the legislature to provide that all other judgments or orders of the district court, or decrees, if there could be any such besides decrees in admiralty, and in equity should be prosecuted within one year from the time of the entry of the decree, and should not be prosecuted after that time.

It has been said with very great force of argument, and I confess that for the moment I was very much impressed by the suggestion, that it is a canon of interpretation, that if it be possible to do so, every word and phrase in the statute shall be taken. Such is to be presumed to be the intention of the legislature.

This may be the rule on the subject of re-

peals by implication. If the legislature had intended to make so improvident and material a change under the circumstances, it can very well be taken that in the act of 1872 a repeal of the provision in question, of the act of 1803, would have been expressly made, and that section 631, which was a re-enactment of the act of 1803, would not be found in these Revised Statutes. But it is by no means to be admitted that this latter canon of interpretation may not be applied here consistently with the maintenance of integrity to both of these provisions—631 and 635. There follows section 631, before reaching 635, this provision, "Final judgments of a district court in civil actions where the matter in dispute exceeds the sum or value of fifty dollars, exclusive of costs, may be re-examined and reversed or affirmed in a circuit court, holden in the same district, upon a writ of error."

Now, as regards such final judgments, there is no limitation as to the time in which they may be reviewed, so far as I am advised, except by this one year limitation in section 635. That section declares, "No judgment, decree, or order of a district court." There is material, so far as judgments are concerned, upon which this limitation can operate. Then, as it regards orders, that term is not necessarily to be considered here, but it is obvious it will occur to any one on a moment's reflection, that there may be a very great variety in the earliest proceedings which may be taken up for review. I need not remark further upon that subject. An order is not always applicable to a decree in admiralty. That, therefore, does not touch the point here under consideration. There is no difficulty, then, in giving this section 635 full operation as to judgments or orders without interfering in any way with provision 631.

Now, as to decrees. It has been said that there is no decree which can be rendered by a district court, except a decree in admiralty and a decree in certain causes in equity, and that, therefore, according to the contention which has been insisted upon, this limitation of one year applies necessarily to decrees in admiralty and decrees in equity. That, we think, is a mistaken view of the fact. I have not had the time to examine this point as thoroughly as I should have desired, if time had been allowed me.

There were, during the war, provisions in force, under which the property of rebels was forfeited, and many decrees to that effect were entered, but the act is no longer in force. There is the case of U. S. v. Miller, which I have not had time to examine, but which I recollect perfectly well. In that case a decree of forfeiture was entered. So in the case of U. S. v. Conrad, a large amount of his real estate was confiscated under the statutory provisions of the United States, touching the property of acting rebels against the government, and a decree of forfeiture was entered at New Orleans by the district court. It was brought to the supreme court of the United States [20 Wall. (87 U. S.) 92], as was the case of U. S. v. Miller [11 Wall. (78 U. S.) 268], and the decrees in both cases were reversed, but they were decrees in forfeiture, and not a decree in admiralty, or a decree in equity.

Now it is sufficient in this connection to remark generally, and without going into detail, that the subsisting revenue laws, both as they regard customs duties and as they regard internal revenue duties, so to speak, provide proceedings for forfeitures, and would not be, in the judgment of this court, a misnomer; on the contrary, as I understand the law, it would be in accordance with the settled principles of law to term the final adjudication of the court a "decree," upon the subject of forfeiture, against the respondent or against the libellant, dismissing the libel or information, as the case may be.

Now, in further illustration of that particular view of the subject, I advert to rule 22 of the supreme court of the United States, established for the government of the inferior courts of the United States in their action in this class of cases. That rule is as follows: "All informations and libels of information, upon seizure for any breach of the revenue, or navigation, or other laws of the United States, shall state the place of seizure, whether it be on land or on the high seas, or on navigable waters within the admiralty and maritime jurisdiction of the United States, and the district within which the property is brought, and where it then is. The information, or libel of information, shall also propound, in distinct articles, the matters relied on as grounds or causes of forfeiture, and aver the same to be contrary to the form of the statute or statutes of the United States in such case provided, as the case may require, and shall conclude with a prayer of due process to enforce the forfeiture, and to give notice to all persons concerned in interest to appear and show cause, at the return day of the process, why the forfeiture shall not be decreed."

It is not necessary to advert to any particular legal statutory provision denouncing forfeitures in the various cases to which these provisions have been extended; it is sufficient to remark generally that they are very numerous.

I have already remarked, and repeat, that it would be no misnomer; on the contrary, it is sanctioned by the language of the rule, and it is in accordance with the settled principles of law on the subject, to hold that the final judgment of the district court in most, if not in all, cases of forfeiture would be properly characterized by terming it a "decree," the jurisdiction being limited to the district court. Now apply that reasoning to the language of this section, 635, premise—

First—Section 631 has explicitly required an appeal to be taken to the next term of the circuit court after it was rendered, as was required in the act of 1789, and of 1803 and 1872, and as required in section 631 of this act.

Further, "no judgment, decree or order." The decrees to which this language refers, or what is meant by the use of that epithet, may well be held to be decrees other than decrees in admiralty and in equity—decrees in the class of causes provided for and contemplated by the rule which has just been read. Now that harmonizes the two sections. It avoids the absurdity, or the improbability, perhaps, would express the idea more accurately, that this provision which unquestionably appears from 1789 to 1872, was intended to be abrogated, and the long period that might intervene in consequence of the disabilities prescribed in that section, should be imported into our admiralty system of jurisprudence of the United States. It cannot be done in the manner in which it is insisted upon it has been done. It would be held to have been done inconsistently with any sound or reasonable construction, either upon the ground of authority, reason or principle, all of which I know are adverse, and in my judgment conclusive against the proposition contended for. The motion to dismiss must therefore prevail, and the appeal is dismissed.